No. 12-2650

=================================================

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

---

GARY D. BOWERS,

U.S.C.A. – 7th Circuit
RECEIVED

NOV 13 2012  JK

GINO J. AGNELLO
CLERK

Plaintiff - Appellant

v.

UNITED STATES OF AMERICA, et al.,

Defendants - Appellees

---

APPEAL FOR REVERSAL OF JUDGMENT IN THE UNITED STATES
DISTRICT COURT FOR THE MIDDLE DISTRICT OF ILLINOIS

---

REPLY OF THE APPELLANT

---

Gary D. Bowers, *pro se*
P. O. Box 502
Pekin, Illinois  61555

Oral Arguments requested

# TABLE OF CONTENTS

page #

Table of Contents and Table of Authorities ……………………………    i-ii

Statement on Oral Arguments ……………………………………………    iii

Reply …………………………………………………………………………..    1-15

Conclusion ……………………………………………………………………    15-16

**Table of Authorities:**

**A.    United States Statutes:**

Pub.L. 94-455, § 1209   ……………………………………………………    15

Title 26 U.S.C. § 6331 ………………………………………………………    passim

Title 26 U.S.C. § 6334 ………………………………………………………    passim

Title 26 U.S.C. § 7433 ………………………………………………………    passim

Title 42 U.S.C. § 402(a) ……………………………………………………    7

**B.    Code of Federal Regulations:**

Title 26 C.F.R. § 301.7433-1 ……………………………………………    6

**C.    Court Opinions:**

Beam v. U.S., 2007 WL 1674083 (2007) …………………………………    10, 13

Chocallo v. United States, 299 Fed.Appx. 112 (3rd Cir. 2008) ……………    5-6

Duran v. I.R.S., 103 A.F.T.R.2d 2009-1365 (2009) …………………………..    10

Flemming v. Nestor, 363 U.S. 603 (1960) …………………………………    8-9

Haberman v. Finch, 418 F.2d 664 (1969) ………………………………… 12

Helvering v. Davis, 301 U.S. 619 (1937) …………………………………… 12

Hines v. United States, 658 F.Supp. 2d 139 (2009) ………………………… 8, 10-13

In re Roberts, 219 B.R. 573 (1997) ……………………………………… 8

Schmiedigen v. Celebrezze (245 F. Supp. 825 (D.D.C. 1965)………………8, 10-12

United States v. Marsh, 89 F. Supp.2d 1171 (2000)……………………….. 12-14

Wesselman v. U.S., 501 F. Supp.2d 98 (D.D.C., 2007) …………………… 10

**D.    Other authorities:**

House Report No. 105-148, § 4.a , pg. 478 …………………………….. 14

Revenue Ruling 55-210, 1955-1 C.B. 544 ………………………………… 13

Vested Rights in Social-Security Benefits,
      Elmer F. Wollenberg, 37 Ore.L.Rev. 299 …………………………… 9, 12

## Statement on Oral Arguments

Pursuant to Local Rule 28-1(c) of this Court, Appellant respectfully informs the Court that he believes oral argument would be helpful to the Court, because of the importance of the issues involved and that it is the first time an appellate court examined them within a clean case.

If oral arguments are ordered, Appellant anticipates having an attorney deliver them.

## Reply of the Appellant

### A.    In summary...

The crux of the Appellees' (hereinafter, "Government" and "IRS") argument is that Social Security retirement benefit checks (hereinafter, "SSA benefit checks") due in the future constitute a <u>right</u> to property just as is any contract would; and therefore, SSA retirement checks did not constitute a privilege, gift or gratuity. Consequently – so the Government argues – any future SSA retirement checks Bowers might receive constituted a "right to property" and therefore were not subject to the Internal Revenue Code ("I.R.C.") § 6331(h) provision which places the 15% cap on levies of "specified payments."

However, the U.S. Supreme Court has repeatedly recognized SSA retirement checks as a <u>privilege</u> and not a right. Since the U.S. Supreme Court recognizes receiving SSA benefit checks as a privilege and not a right, future payments of same are consequently not a right or "right to property," the remainder of the Government's arguments collapse like a house of cards., e.g., the Government has in fact waived sovereign immunity by the exclusive remedy Congress afforded and codified in I.R.C. § 7433; levies of his SSA benefit checks in excess of 15% is unlawful; Plaintiff/Appellant Gary D. Bowers ("Bowers") has in fact been "damaged" for the purposes of I.R.C. § 7433 as envisioned by Congress; and Bowers is therefore entitled to a damage award pursuant to I.R.C. § 7433, the exclusive remedy in this case.

**B.    The exclusive remedy for damages are found I.R.C. § 7433, for Bowers has never sought relief in the form of a "refund suit" pursuant to the provisions of I.R.C. § 7422 or other similar remedy.**

In its effort to thwart Bower' efforts for recovery of monies taken from his SSA benefit checks beyond the 15% limit set by law as discussed in his Opening Brief and infra, the Government attempts to mischaracterize Bowers' claim as a refund suit governed by IRC § 7422. However, a refund suit, with certain restrictions, is a remedy available only when a refund is denied for overpayment of a tax. Bowers is not seeking a refund for overpayment of a tax. Instead, Bowers seeks restitution (damages) for the levying of his SSA benefit checks beyond what the law allows. Apparently, Congress understood this distinction when it codified I.R.C. § 7433, providing for damage awards resulting from IRS misconduct in connection with any collection of federal tax. Our courts concur.

In *Wesselman v. U.S.*, 501 F. Supp.2d 98 (D.D.C., 2007), the court acknowledged:

> " *'...the waiver of sovereign immunity provided in § 7433 is limited to claims that "aris[e] from the **collection** of income taxes.' Id. at 136 (emphasis added); see id. at 135-36. Section 7433 does not give the Court jurisdiction over '[c]laims that the IRS has incorrectly determined the amount of taxes owed" or any other claims that do **not** directly arise from the IRS's collection activities." [Internal emphasis in original.]*

Bowers' claim arises solely from the IRS' collection activities.

This exclusive remedy for damages states in pertinent part:

> *I.R.C. § 7433(b) Damages.--In any action brought under subsection (a) or petition filed under subsection (e), upon a finding of liability on the part of*

> *the defendant, the defendant shall be liable to the plaintiff*
> *(1) actual, direct economic damages sustained by the plaintiff as a*
> *proximate result of the reckless or intentional or negligent actions of the*
> *officer or employee ....*

Bowers has met this criteria in that the damages he suffered are (1) actual; that said damages are (2) "direct economic damages"; and that this actual damage was (3) the "proximate result" of the actions of IRS employee(s). All three factors are present here.

Furthermore, this Court may take judicial notice that proximate damages are damages directly, immediately and naturally flowing from the act complained of. Bowers has been actually damaged economically, in that the IRS took more than 15% of Bowers' SSA benefit checks than what the law provides for. Further, this taking beyond 15% resulted in actual hardship as the result of this unlawful diminishment of the monies Bowers subsists on, with its attendant consequences.

The Government acknowledges IRC § 7433 is "a civil action for damages", yet further states "*Taxpayer has not requested damages, and has not alleged that he incurred any of the 'actual, direct economic damages' ... that are compensable in a suit under this provision.*" See p. 13, Response Brief. After boldly stating that Bowers never requested damages and that he incurred no actual direct economic damages – even though the factual record here shows otherwise – the Government stops right there without citing any legal authority, e.g., case law, to buttress this unfounded conclusion. Perhaps it is because no such authority exists. Bowers'

search of Westlaw's compilation of Title 26 U.S.C. § 7433 turned up no case law that makes any distinction between damages arising from a levy of retirement benefits in excess of what the law provides for, and other varieties of wrongful levies for which the courts routinely award compensatory damages. Obviously there is at least one kind of levy that could give rise to "damages" that are the "proximate result" of negligence or worse, or this remedy at law would be completely meaningless. Apparently, Congress envisioned a remedy at law for <u>all</u> varieties of wrongful levy actions that give rise to proximate damages in the general sense, since Congress felt no need to make a distinction between different varieties of proximate damages in IRC § 7433. Here, it seems the IRS reasons that if the levies were in excess of what the law provided for (more than 15%), Bowers was nevertheless undamaged because he owed the money anyway and thus has no remedy under I.R.C. § 7433. It is safe to presume there is nothing in this statute or the case law to support any such argument, or else the Government would have discovered and referred to it. Wherefore, if Bowers has been damaged within the meaning of IRC § 7433, then the Government has waived sovereign immunity, and Appellee's assertion to the contrary fails. As such, the District Court did indeed have matter jurisdiction to hear this case.

The Government also claims that Bowers failed to exhaust his administrative remedies. For example, on page 14 of its Response, the IRS makes the incorrect claim that Bowers never provided the dollar amount of his claim, his Social

Security Account number, and a phone number. The letter Bowers sent to the IRS to satisfy the administrative remedy requirement – Exhibit 2 attached to the Complaint – clearly sets forth a sum certain and substantially raises his claim for future damages that were likely to occur as the result of the continuous levy. See Appendix to Opening brief, pp. 13-14: Bowers' administrative claim letter dated May 20, 2010. Indeed, Bowers never challenged the assessment itself. Bowers only complained that he was damaged in that the amounts levied from his SSA benefit checks were larger than what the law allowed for. The Government also claims, on page 14 of its Response Brief, that Bowers failed to provide a "taxpayer identification number" when clearly, the number clearly appears on the exhibit which accompanied Bowers' administrative claim letter. See Appendix to Opening Brief, p. 10-11.

Appellee also states that Bowers' administrative claim letter was not sent to the correct office of the IRS because it was not sent to "*the Area Director, Attn: Compliance Technical Support Manager of the area in which the taxpayer currently resides*," as per the law and implementing regulations. However, the office of the Area Director has effectually been abolished by virtue of the IRS Restructuring and Reform Act of 1998. Interestingly, in all these years, this obsolete regulation (26 C.F.R. § 31.7433-1(e)) has never been updated so as to provide current mailing address to send such items to. Yet the Defendants cite *Chocallo v. United States*, 299 Fed.Appx. 112, 116, as setting forth a requirement

that Bowers failed to comply with. Surely an unpublished case is not a regulation, and it could never be promulgated. More significantly, *Chocallo* is inapposite to the Government's argument making one wonder why it was cited in the first place.

The Administrative Procedure Act (APA), Title 5, U.S.C. Ch. 5, sections 511-599, requires that some 55 U.S. governmental agencies provide an opportunity for notice and comment when creating rules and regulations implementing major pieces of legislation. Promulgation is the act of formally proclaiming or declaring a new statutory or administrative law after its enactment. Agencies that act as "authorit(ies) of the Government of the United States" – including the IRS – are covered by the APA. Whenever the IRS promulgates rules and regulations implementing a piece of legislation – in case, IRC § 7433's requirement to exhaust administrative remedies before going to the District – it must provide general notice through publication in the Federal Register. The notice must include a statement of the time, place and nature of the rulemaking proceedings, reference to the legal authority under which the rule is proposed, and either the terms or substance of the proposed rule. It was not Bowers' fault the IRS failed to amend 26 C.F.R. § 301.7433-1(e)(1) and promulgate such. And the obscure, unpublished *Chocallo* case certainly would not rise to the level of a regulation, even if it did provide a means to better comply with the exhaustion of remedies of I.R.C. § 7433. As such, the Government's argument that Bowers failed to send his administrative

claim letter to the correct IRS office falls flat on its face, *ab initio[1]*.

However, even if there did appear any trifling insufficiencies in Bowers' administrative claim letter, this would not preclude any damage award entirely. Indeed, the District Court did not express any opinion on any alleged insufficiencies of Bowers' administrative claim letter.

On pages 20-21 of its Response, the Appellees point out that the Supreme Court has held that the language of I.R.C. § 6331(a) envisions a broad intention "to reach every interest in property that a taxpayer might have" citing *Drye v. United States*, 582 U.S. 49, 56 (1999) and *U.S. v. National Bank of Commerce*, 475 U.S. 713 (1985). The Government then goes on to cite cases where pension payments and disability payments to be received in the future constitute a "right to property." While this may be true, with respect to fixed payments that are of a contractual nature involving consideration among all parties as with retirement and insurance plans, the Government then goes on to assert that "*a Social Security annuitant possesses a present <u>right</u> to future payments*," [underline emphasis added] citing Title 42 U.S.C. § 402(a) and two District cases. The language of § 402(a) states in pertinent part: "*Every individual who— [meets three qualifications]... shall be **entitled** to an old-age insurance benefit for each month...*" [bold emphasis added], and says nothing of a "right." A "right" and a "benefit" or "entitlement" are two

---

[1]    Again, Bowers sent it to the Taxpayer Advocate in his area, and the main offices of the IRS in Wa. D.C.

different things. One is a debt, the other is grace.

The three district cases that the Government's argument primarily hinges upon are *Hines v. United States*, 658 F.Supp.2d at 146-47; *In re Roberts*, 219 B.R. 573 (1997) and *Schmiedigen v. Clebrezze*, 245 S.Supp. 825, 827 (D.D.C. 1965). All these cases operate upon the presumption that Social Security benefit checks are a <u>right</u> and not an entitlement or privilege. However, this dicta runs counter to what the U.S. Supreme Court has stated about the nature of Social Security retirement benefits. Social Security retirement benefits, being an entitlement or privilege, cannot not constitute a <u>future right to property</u> which is subject to the "one-time" levy provisions of I.R.C. § 6331(a), to the exclusion of I.R.C. § 6331(h) which places the 15% cap on levies that are continuous in effect. Since SSA benefits do not constitute a future right to property, the 15% cap does apply by default in this case because I.R.C. § 6331(a) only extends to a <u>right</u> to property. (See Response Brief, pp. 20 et seq.) Yet the Government states, on p. 26:

> "*Taxpayer maintains that his continuing receipt of Social Security retirement benefits does not constitute a 'right to property,' and that I.R.C. § 6331(a) therefore does not authorize a levy on those payments. ...Taxpayer is wrong.*"

What authority does the Government rely upon to support this legal theory? The three aforementioned unpublished U.S. District Court cases, and *Schmiedigen v. Celebrezze*, id. This authority is pretty feeble in light of the published decisions of the U. S. Supreme Court which say just the opposite. In *Flemming v. Nestor*,

363 U.S. 603, 609 (1960) the Supreme Court, Justice Harlan said:

> *"The Social Security system may be accurately described as a form of social insurance, enacted pursuant to Congress' power to 'spend money in aid of the 'general welfare,'" Helvering v. Davis, supra, 301 U.S. at page 640, 57 S.Ct. at page 908, whereby persons gainfully employed, and those who employ them, are taxed to permit the payment of benefits to the retired and disabled, and their dependents. \* \* \* But each worker's benefits, though flowing from the contributions he made to the national economy while actively employed, are not dependent on the degree to which he was called upon to support the system by taxation.* **It is apparent that the noncontractual interest of an employee covered by the Act cannot be soundly analogized to that of the holder of an annuity, whose right to benefits is bottomed on his contractual premium payments.**
>
> **"\* \* \* To engraft upon the Social Security system a concept of 'accrued property rights' would deprive it of the flexibility and boldness in adjustment to everchanging conditions which it demands.** *See Wollenberg, Vested Rights in Social-Security Benefits, 37 Ore.L.Rev. 299, 359. It was doubtless out of an awareness of the need for such flexibility that Congress included in the original Act, and has since retained, a clause expressly reserving to it '(t)he right to alter, amend, or repeal any provision' of the Act.*
>
> **"<u>We must conclude that a person covered by the Act has not such a right in benefit payments as would make every defeasance of 'accrued' interests violative of the Due Process Clause of the Fifth Amendment.</u>"**

[Bold and underline emphasis added]

Bowers cited numerous other authorities showing that Social Security retirement benefit checks can never be realistically considered a "future right to property" said authorities, which certainly hold more weight than district courts dicta to the contrary, most of which are even off point, in that they do not even deal with entitlement programs, but rather, contractual situations like annuities.

The three unpublished cases the Government refers to on page 26 of the Government's Response Brief, *Leining v. U.S.*, *U.S. v. Cleveland* and *Bonetti v.*

*Dept. of the Treasury* never even address the applicability of the 15% cap issues and therefore need not be considered. Thus, the only cases cited by the Government which appear to label Social Security requirement benefit checks as giving rise to "rights to property" were *Hines v. United States*, 658 F.Supp. 2d 139 (2009) 658 F.Supp. 2d 139 (2009) and *Schmiedigen v. Celebrezze*, 245 F.Supp. 825, 827, *U.S. v. Marsh* 89 F.Supp.2d at 1179; *Duran v. I.R.S.*, 103 A.F.T.R.2d 2009-1365 (2009) and *Beam v. U.S.*, 2007 WL 1674083 (2007). This is the authority the Government relies upon to support its claims that the IRS Form 668-W attaches future social security benefits based upon the theory social security recipients possesses a present right to future payments.

Judge Friedman in *Hines*, in disregard of the rulings of the U.S. Supreme Court, without explanation, states:

> "*Plaintiff's right to receive periodic payments for his Social Security retirement benefits was a* **vested interest***. See 42 U.S.C. § 402(a); Schmiedigen v. Celebrezze, 245 F. Supp. 825, 827 (D.D.C. 1965). The amount of benefits are calculable — they are based on earnings averaged over plaintiff's lifetime and determinable based upon a complex formula. See 42 U.S.C. §§ 402 et seq. The Social Security Administration's ongoing payment of a specific amount of retirement benefits to plaintiff every month therefore was an* **"obligation[] existing at the time"** *the levies attached under 26 U.S.C. § 6331(b).* [Bold added]

I.R.C. § 6331(b) states: "Except as otherwise provided in subsection (e), a levy shall extend only to property possessed and obligations existing at the time thereof." The reference to "obligations existing at the time" is in contradistinction to *future obligations*, to which the continuous wage levies of subsection (e) attach.

It is not a separate classification for what can be attached by a levy, since subsection (a) already establishes that limit:

> "*If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax ... by **levy upon all property and rights to property** (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax.* [Bold added]

Thus, "obligations existing at the time" are only attached by a levy insofar as they constitute either "property" or "rights to property." Therefore, unpaid future Social Security benefits, not yet being the "property" of the beneficiary, are only attachable by levy if they constitute a "right to property." The court in *Hines* declares that they are, in that Hines had a "vested interest" in those future benefits, and in support thereof, cites *Schmiedigen* supra. However, that declaration is not supported by *Schmiedigen*, and is in fact, contradicted by that decision. In *Schmigden*, Judge Holtzoff stated:

> "*Consequently, **in spirit at least, if not strictly and technically**, the employee, who throughout his working life has contributed part of the premiums in the form of deductions from his wages or salary, **should be deemed to have a vested right to the payments prescribed by the statutory scheme**, which in effect comprises the terms of his insurance policy. He has earned the benefits; **he is not receiving a gift**.*" [Emphasis added]

Judge Holtzoff <u>admits</u> that "strictly and technically" an employee does *not* have a vested right in Social Security benefits, but only "in spirit" should he "be deemed" to have such a right. These statements undermine the conclusions of both Judges Holtzoff and Friedman.

In *Haberman v. Finch*, 418 F.2d 664 (1969), Second Circuit Judge Kaufman had this to say about the *Schmiedigen* decision:

> "*Judge Holtzoff also pointed out that while **the Act does not create vested rights**, the System is a contributory one, in which claimants (or their beneficiaries) are **not to be treated as recipients of gratuities**, but as insured wage earners, entitled to no less than a 'liberal and broad construction' will allow*." 245 F.Supp. at 827. [Bold added]

While these judges correctly recognized that a recipient of Social Security benefits has no vested right in future benefit payments, both still fail to recognize that Social Security benefits are indeed gratuities or gifts, which is the exact position argued by the government in 1937 in the case *Helvering v. Davis*, 301 U.S. 619 (1937).

Elmer F. Wollenberg, in his article that Justice Harlan cited approvingly, explains that if benefit recipients had vested rights in the benefits they received, then Congress would be severely limited in the changes that they could make in trying to adapt to future conditions. He concludes, "Title II is another Federal system of "gratuities," in the legal sense of that somewhat obnoxious word."[2] And in the context of gratuities, the Supreme Court has said:

> "*Pensions, compensation allowances, and privileges are gratuities. They involve no agreement of parties; and **the grant of them creates no vested right**. The benefits conferred by gratuities may be redistributed or withdrawn at any time in the discretion of Congress. Lynch v. United States*, 292 U.S. 571, 577 (1934) [Bold emphasis added]

Thus in *Hines*, Judge Friedman not only misstates the precedent he claims to be

---

[2] Wollenberg, pg. 358.

following, but also contradicts the precedence set by the Supreme Court.

Revenue Ruling 55-210, 1955-1 C.B. 544 is not in disagreement with this view either. The ruling states:

> "[I]t is the position of the Internal Revenue Service that where a taxpayer has an **unqualified fixed right, under a trust or a contract, or through a chose in action**, to receive periodic payments or distributions of property, a Federal lien for unpaid tax attaches to the taxpayer's entire right, and a notice of levy based on such lien is effective to reach, in addition to payments or distributions then due, any subsequent payments or distributions that will become due thereunder, at the time such payments or distributions become due. (Emphasis added)

The distinction made here is whether an *unqualified right* to the future payments already exists, as in the case of a trust or other contract. Indeed, the majority of the examples cited by Government of decisions rendered in conformance with Rev. Rul. 55-210 all have that characteristic. However, as shown above, beneficiaries of Social Security benefits have no contractual right to future payments and therefore a one-time levy does not reach those future payments, despite the *Hines* court's decision otherwise. If the Internal Revenue Service wants to reach future Social Security benefit payments, the only way is through a continuous levy under I.R.C. § 6331(h).

Nevertheless, despite the fact that the opinion contains no indication that the court even considered the distinction between one-time and continuous levies, the Government wants this false generalization to be construed as the *Beam* court's recognition "that a one-time levy reaches Social Security Benefits, present and future, obviating the need for a continuous levy." Indeed, this position is

contradicted by Congress, which gave this explanation for the change in law by The Taxpayer Relief Act of 1997:

> *The provision amends the Code to provide that a continuous levy is also applicable to non-means tested recurring Federal payments. This is defined as a Federal payment for which eligibility is not based on the income and/or assets of a payee.* ***For example, Social Security payments, which are subject to levy under present law, would become subject to continuous levy.***
>
> *In addition, the provision provides that* ***this levy would attach up to 15 percent of any specified payment*** *due the taxpayer.* [Bold emphasis added] House Report No. 105-148, § 4.a, pg. 478

Certainly, this explanation shows Congress' recognition of the necessity for a continuous levy to reach future Social Security payments – bring it under the provisions placing a 15% cap on such levies. Under the Government's construction of the law, Congress' stated purpose to subject Social Security benefits to a continuous levy was meaningless, and their efforts in vain, because if a one-time levy could attach to all future benefit payments, then there could be no possible use to subject them to a continuous levy, the only purpose of which is to capture future payments. Thus, Congress recognized that one-time levies do not attach future Social Security benefit payments, and expanded the levy power to allow for continuous levies to do so. However, that authority was directly tied to the 15% cap established by § 6331(h)(1).

## C.     Section 6331(h) enlarges levy authority, not shrinks it

The Government argues that "[s]ection 6331(h) does not curtail the IRS's ability to collect unpaid taxes by levying on Social Security retirement benefits

under Section 6331(a).  Instead, Section 6331(h) merely gives the IRS another option when exercising its discretion in collecting unpaid taxes. (Response Brief, pp. 25 et seq.)  Yet, the same thing could be said of subsection (e), which extended continuing levies to wages and salaries that were not previously subject to them. However, at the same time that subsection (e) was added to enlarge the levy authority, I.R.C. § 6334(a)(9) was also added (Pub.L. 94-455, §§ 1209(d)(1) and 1209(a) respectively), which established the limit on the amount of such wages and salaries that could be attached. Thus, the enlargement of levy authority was tied to a reduction in the amount that could be seized. Likewise, the addition of subsection (h) is also tied to a limit in the amount that continuous levies under that subsection can attach; that limit is 15% (except in the case of federal payments to vendors, for which 100% can be attached). Thus, it is not true that the amendment does not contain any language evincing a desire to curtail IRS levy power. The language of subsection (h)(1) — establishing the 15% limit does indeed evince Congress' desire to restrict the reach of the expanded power.

## CONCLUSION:

Wherefore, Appellant prays that this Court:

1. FIND that the District Court for the Middle District of Illinois erred when it found that it did not have jurisdiction over this controversy for failure to state a claim upon which relief may be granted;

2. FIND that, consistent with the rulings of the United States Supreme Court,

Social Security retirement benefits are not contractual in nature, do not constitute an insurance program, and do not give rise to a vested right, but are rather, a privilege;

3.  FIND that an IRS levy upon Social Security Administration retirement benefit checks cannot be the subject of a one-time levy, but rather, can only be levied in keeping with the continuous levy provisions of Title 26 U.S.C. § 6331 (h);

4.  DECIDE that the District Court for the Middle District of Illinois had jurisdiction pursuant to the provisions of Title 26 U.S.C. § 7433; and,

5.  REMAND this case back to the United States District Court for further proceedings, so that it may make a decision in keeping with the ORDERS of this Court.

Respectfully submitted this 9th day of November, 2012.

Gary D. Bowers
P. O. Box 502
Pekin, Illinois  61555

## Certificate of Compliance with Type-volume Limitation, Typeface Requirements, and Type Style Requirements

1.    This reply brief complies with the type-volume limitations of Fed. R. App. P. 32(a) (7) because this brief contains 4,234 words, excluding the parts of the brief exempted by Fed. R. App. P. 32 (a) (7) (B) (iii)

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32 (a) (5) and the type style requirements of Fed. R. App. P. 32 (a) (6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word for Windows in 14 point Times New Roman.

Respectfully submitted this 9th day of November, 2012.


Gary D. Bowers
P. O. Box 502
Pekin, Illinois  61555

## CERTIFICATE OF SERVICE

I, James Kerr, who is over the age of 21, do hereby certify that 25 copies of the above brief was mailed to the Clerk of the United States Court of Appeals for the 7th Circuit by Federal Express Mail on this 0th day of November, 2012; and that service of this brief was made on the attorney for the Appellee, on this 9th day of November, 2012, by mailing two copies of this brief by First Class mail in an envelope, properly addressed to her with correct postage affixed, as follows:

Teresa T. Milton, Atty.
U.S. DOJ – Tax Div./Appellate Sec.
P. O. Box 502
Washington, D.C.  20044